**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAMMY RAUL, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| NEVSUN RESOURCES LTD., IAN W. PEARCE, IAN R. ASHBY, GEOFF CHATER, ANNE E. GIARDINI, PETER G. KUKIELSKI, STEPHEN SCOTT, and DAVID S. SMITH, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Nevsun Resources Ltd. ("Nevsun" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Nevsun's website concerning the Company's public statements; and (d) review of other publicly available information concerning Nevsun and the Defendants.

## **NATURE OF THE ACTION**

1.      Plaintiff brings this class action on behalf of the public shareholders of Nevsun against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed sale of the Company in a cash transaction with Zijin Mining Group Co. Ltd. ("Zijin") (the "Proposed Transaction").

2.      On September 5, 2018, Nevsun announced that the Company had entered into a definitive agreement with Zijin, pursuant to which Zijin will make a take-over bid to acquire all of the issued and outstanding shares of Nevsun for C$6.00 per share in cash (the "Offer").  The Offer is valued at C$1.86 billion (US$1.41 billion).

3.      The Proposed Transaction also contains restrictive deal protection devices that preclude the defendants from being able to shop the Company in the best interests of the shareholders.  The deal protection devices include: (i) a "no-shop" provision that restricts the Company's ability to solicit alternative acquisition proposals for third parties; and (ii) a termination fee of $50 million that Nevsun must pay to Zijin.

4.      On September 14, 2018, the Company filed with the SEC an incomplete and misleading Solicitation Statement (the "Solicitation Statement") on Form SD14D-9F in connection with the Proposed Transaction.  The Solicitation Statement and the exhibits thereto omit material information regarding the Proposed Transaction.

5.      Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Nevsun

stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

6.     As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act

8.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

10.    Plaintiff has been the owner of the common stock of Nevsun since prior to the transaction herein complained of and continuously to date.

11.    Defendant Nevsun is a Canadian corporation with its principal executive offices located at 1750-1066 West Hastings Street, Vancouver, British Columbia, Canada V6E 3X1. The Company's stock trades on the New York Stock Exchange (the "NYSE") under the ticker "NSU."

12.     Defendant Ian W. Pearce ("Pearce") is and has been a director of the Company at all times during the relevant time period.

13.     Defendant Ian R. Ashby ("Ashby") is and has been a director of the Company at all times during the relevant time period.

14.     Defendant Geoff Chater ("Chater") is and has been a director of the Company at all times during the relevant time period.

15.     Defendant Anne E. Giardini ("Giardini") is and has been a director of the Company at all times during the relevant time period.

16.     Defendant Peter G. Kukielski ("Kukielski") is and has been a director of the Company at all times during the relevant time period.

17.     Defendant Stephen Scott ("Scott") is and has been a director of the Company at all times during the relevant time period.

18.     Defendant David S. Smith ("Smith") is and has been a director of the Company at all times during the relevant time period.

19.     Defendants Pearce, Ashby, Chater, Giardini, Kukielski, Scott, and Smith are collectively referred to herein as the "Individual Defendants."

20.     Defendant Nevsun, along with the Individual Defendants, are collectively referred to herein as "Defendants."

**CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public stockholders of Nevsun (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.    This action is properly maintainable as a class action because.

a.    The Class is so numerous that joinder of all members is impracticable. As of September 13, 2018, there were 302,592,672 shares of Nevsun common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Nevsun will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including, among others: Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(d)(4) of the  Exchange Act and Rule 14d-9 promulgated thereunder in connection with the Proposed Transaction; (ii) whether Defendants have violated Section 14(e) and 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Solicitation Statement as currently composed.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with

respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23.    Nevsun is a mid-tier base metals company with its principal executive offices located in Vancouver, British Columbia.

24.    The Company operates Bisha, a high-grade open pit copper-zinc mine, and is developing the Timok copper-gold project.

### The Company Announces the Proposed Transaction

25.    On September 5, 2018, Nevsun issued a press release announcing that the Company had entered an agreement in connection with the Proposed Transaction.  Pursuant to the terms of the agreement Zijin will make a take-over bid to acquire all of the issued and outstanding shares of Nevsun for C$6.00 per share in cash. The offer is valued at C$1.86 billion (US$1.41 billion).  The Company received financial opinions from BMO Nesbitt Burns Inc. ("BMO") and Citigroup Global Markets Inc. ("Citi") in connection with the Proposed Transaction.

26.    The September 5, 2018 press release stated, in pertinent part:

**Vancouver, BC**, / **Fujian, China** -- Nevsun Resources Ltd. (TSX:NSU) (NYSE AMERICAN: NSU) ("Nevsun" or the "Company") and Zijin Mining Group Co. Ltd. (SH:601899, SEHK:2899) ("Zijin") today announced that the parties have entered into a definitive agreement pursuant to which Zijin will make a take-over bid to acquire all of the issued and outstanding shares of Nevsun for C$6.00 per share in cash (the "Offer"). The Offer is valued at C$1.86 billion (US$1.41 billion).

6

The cash consideration of C$6.00 per share represents a premium of 57% over Nevsun's unaffected closing price of C$3.82 on May 7, 2018, the day Lundin Mining Corporation ("Lundin") first publicly announced its intention to acquire Nevsun. In addition, the Offer is C$1.25 per Nevsun share, or 26%, more than the C$4.75 per share hostile take-over bid for Nevsun launched by Lundin on July 26, 2018. The Offer is not subject to any financing conditions.

Details of the Offer will be included in a take-over bid circular that Zijin will file and mail to Nevsun shareholders in the coming days, but no later than September 18, 2018. Nevsun's Board of Directors unanimously recommends that Nevsun shareholders tender their shares to ACCEPT the Offer. The basis for this recommendation will be included in a Nevsun Directors' Circular that will be filed and mailed to Nevsun shareholders concurrently with the filing of the Zijin take-over bid circular. Nevsun's Board of Directors continues to recommend that Nevsun shareholders REJECT the hostile take-over bid launched by Lundin on July 26, 2018 and NOT tender their shares to the Lundin offer, which will expire on November 9, 2018.

"This premium transaction is an excellent outcome for our shareholders, and the result of a rigorous and competitive global process to generate maximum value for Nevsun's outstanding assets," said Ian Pearce, Chair of Nevsun's Board of Directors. "The all-cash consideration of C$6.00 per share better reflects the fundamental value of Nevsun's mining and development assets, while also providing an appropriate change of control premium to our shareholders."

"Zijin is a proven mining industry operator with a US$10 billion market capitalization and a demonstrated track record of successfully completing international transactions. The Board unanimously recommends that Nevsun shareholders tender their shares to accept this offer and receive the significant value that it represents."

Chen Jinghe, Chairman of Zijin, added, "Nevsun is an exceptional operator, with a strong focus on safe, efficient and sustainable mining practices. As the new owner we will continue that focus, and we look forward to working with stakeholders in Eritrea and Serbia to advance these mining and development assets. At the Bisha mine in Eritrea, our objective will be to further extend the life of the mine and explore for new deposits. At the Timok Project in Serbia we intend to rapidly develop the Upper Zone and bring it into production, and continue to advance and define the world-class potential of the Lower Zone."

Nevsun's Board of Directors had previously rejected the hostile bid from Lundin on the grounds that it, among other reasons, ignored the fundamental value of Nevsun's assets. Following the launch by Lundin of its hostile bid, a special committee of Nevsun's independent directors (the "Special Committee"), with the assistance of Nevsun's advisors, initiated a review of all value-maximizing alternatives, including, but not limited to, an acquisition of all issued and outstanding Nevsun shares. This process has involved a number of global parties undertaking comprehensive due diligence on Nevsun. The Offer is a result of this full strategic alternative review process. Nevsun's Board of Directors and the

Special Committee concluded that the Offer currently represents the best alternative available to Nevsun and provides Nevsun shareholders with the highest value proposition.

Formed in 1993, Zijin is based in Fujian, China and is a leading global mining company specializing in gold, copper, zinc and other mineral resource exploration and development. Zijin manages an extensive portfolio, primarily consisting of gold, copper, zinc, and other metals through investments in China and overseas across nine countries. Listed on the Shanghai Stock Exchange and the Hong Kong Stock Exchange, Zijin has a market capitalization of approximately US$10 billion.

Among Zijin's substantial global mining activities are strategic partnerships with Toronto-based Barrick Gold Corporation, related to the Porgera mine in Papua New Guinea; and Vancouver-based Ivanhoe Mines Ltd., related to the Kamoa-Kakula copper project in the Democratic Republic of Congo. Zijin also completed a Board-supported take-over of Norton Gold Fields Ltd., an Australian mining company, in 2015. Zijin is looking to participate in global mineral resources allocation, satisfy the demand arisen from economic development of China, and become a key global player in the production of gold, copper, and zinc. Its strategic focus includes a combination of internationalization, project upsizing and asset securitization, as well as a combination of its core business (i.e., gold and copper production) with other types of metal mineral businesses.

**Transaction Details**

The Board of Directors of Nevsun, acting on the recommendation of the Special Committee, and after evaluating the Offer in consultation with Nevsun's legal and financial advisors, has determined that the Offer is fair to Nevsun shareholders and in the best interests of Nevsun. Nevsun's Board of Directors and the Special Committee received separate opinions, dated September 4, 2018, from their respective financial advisors, BMO Nesbitt Burns Inc. ("BMO Capital Markets") and Citigroup Global Markets Inc. ("Citi"), as to the fairness, from a financial point of view and as of the date of such opinions, of the C$6.00 per Nevsun common share cash consideration offered by Zijin pursuant to the Offer to holders of Nevsun common shares (other than Zijin, Lundin and their respective affiliates), which opinions were based on and subject to the assumptions made, procedures followed, matters considered and limitations and qualifications on the review undertaken as more fully described in such opinions.

The Offer is subject to a minimum tender requirement of 66⅔% of Nevsun's issued and outstanding shares (including those held directly or indirectly by Zijin and its affiliates). Nevsun currently has approximately 302,592,672 shares and 7,107,233 options issued and outstanding. Zijin currently controls 3,197,191 shares, equivalent to 1.06% of the total shares issued and outstanding. Nevsun management and directors have entered lock-up agreements and have agreed to tender their shares to the Offer. Nevsun shareholders will have an initial deposit period of 105 days which Nevsun has agreed to shorten upon Zijin's receipt of all regulatory approvals.

The Offer is subject to approval under the Investment Canada Act and the Canadian Competition Act, approval by relevant authorities in China, as well as customary closing conditions.

The definitive agreement provides for, among other things, a non-solicitation covenant on the part of Nevsun (subject to customary fiduciary out provisions). The definitive agreement also provides Zijin with a right to match any competing offer which constitutes a superior proposal.

A termination payment of US$50 million will be payable by Zijin to Nevsun in certain circumstances, including failure to obtain the necessary approvals from relevant authorities in China, subject to certain exceptions. This termination fee is being held by the depository in Canada.

Zijin is entitled to a termination payment of US$50 million if the definitive agreement is terminated in certain circumstances, including if Nevsun enters into an agreement with respect to a superior proposal, or if the Board of Directors of Nevsun withdraws or modifies its recommendation with respect to the Offer.

Specific terms and conditions will be included in the Zijin take-over bid circular and the Nevsun Directors' Circular which will be mailed to Nevsun shareholders no later than September 18, 2018. These materials along with the definitive agreement will also be available under Nevsun's profile on SEDAR at www.sedar.com, and on Nevsun's website at www.nevsun.com.

**Advisors**

Counsel for Nevsun's Special Committee is Borden Ladner Gervais LLP. The Special Committee's independent financial advisor is Citi. Counsel for the Company is Blake, Cassels & Graydon LLP and U.S. counsel is Gibson, Dunn & Crutcher LLP. The Company's financial advisor is BMO Capital Markets.

Counsel for Zijin is Fasken Martineau DuMoulin LLP. Zijin's financial advisor is Morgan Stanley.

### Background of the Proposed Transaction

27.    From May 2017 to December 2017 there were several discussions between Lundin Mining and Nevsun regarding a potential transaction. These discussions culminated on February 7, 2018, when Lundin Mining submitted a highly conditional formal proposal in writing to acquire all outstanding Nevsun Shares for $3.43 per Nevsun Share in cash. The proposal also contemplated a spin-out of Nevsun's stake in the Bisha Mine into a new company, the common shares of which would be distributed to Nevsun Shareholders. Lundin Mining valued this Bisha spin-out at $0.32 per Nevsun Share.

28.     On February 13, 2018, a special committee of three  directors was formed by the Nevsun Board (the "Special Committee") to facilitate the consideration of Lundin Mining's offer and ensure that fair consideration was given to it.

29.     The Nevsun Board, on the recommendation of the Special Committee dismissed Lundin Mining's proposed $3.43 offer price as inadequate.

30.     Between February 7, 2018 and July 26, 2018, Lundin Mining submitted several offers under several structures and with several partners for the Nevsun Board's consideration. The Board determined that none of the offers proposed by Lundin Mining contained sufficient value.

31.     On July 26, 2018, the Lundin Hostile Bid for $4.75 per Nevsun Share in cash was formally commenced by publication of an advertisement in the National Edition of *The Globe and Mail* in English, and in Québec, in *Le Devoir*, in French and the Lundin Circular, a letter of transmittal and a notice of guaranteed delivery were delivered to Nevsun and filed with the Canadian regulatory authorities on SEDAR and the SEC on EDGAR.  The Lundin Hostile Bid was taken under consideration by the Special Committee and the Nevsun Board in consultation with their respective advisors.

32.     On August 9, 2018, Nevsun filed a directors' circular recommending rejection of the Lundin Hostile Bid (the "Rejection Circular").

33.     Thereafter, BMO, Nevsun's financial advisor, identified a number of additional potential strategic investors and began approaching such parties to assess their potential interest in a transaction with Nevsun. By May 24, 2018, eight potential strategic investors, including Zijin Mining, had signed non-disclosure agreements and four formal proposals for various types of strategic investments and related technical project support had been received.

34.    In May and June 2018, Nevsun continued seeking a suitor for the Company, culminating in the receipt of proposals from eight parties, including Zijin Mining, indicating their interest in purchasing up to a 19.9% equity stake in Nevsun along with various proposals to partner with Nevsun in developing the Timok Project. The process culminated on August 7, 2018 with four proposals received from major and mid-tier mining and smelting companies to purchase up to a 19.9% equity interest in Nevsun and to partner with Nevsun in developing the Timok Project.

35.    When the Lundin Hostile Bid was formally commenced on July 26, 2018, the Nevsun Board commenced a Strategic Review Process to consider potential alternatives available to Nevsun to maximize value – above and beyond the proposals generated by Nevsun's Strategic Investor Process – including the potential acquisition of Nevsun as a whole. Several parties, including Zijin Mining, expressed interest in value-enhancing alternatives to the Lundin Hostile Bid.

36.    On August 8, 2018, Nevsun received a non-binding proposal letter from Zijin Mining which contemplated a transaction in which Zijin would acquire 100% of the Nevsun Shares at a price of $6.00 per Nevsun Share in cash.

37.    On August 13, 2018, the Special Committee reconvened with Nevsun's advisors to consider the Zijin Mining proposal further and in detail. After careful consideration of such proposal, including the expected terms and conditions of a formal Zijin Offer, the impact of accepting the Zijin Mining proposal on Nevsun's value maximization process, and the likelihood of Nevsun receiving additional superior offers, the Special Committee determined to authorize Nevsun's advisors to engage Zijin Mining's advisors to negotiate Zijin Mining's proposal.

38.     The Special Committee held six additional meetings with its advisors while continuing to advance the Zijin Mining proposal and the key terms and conditions of a pre-acquisition agreement and related agreements.

39.     On September 4, 2018, the Special Committee met with its legal and financial advisors to consider a finalized Zijin Mining proposal.  After carefully considering the Zijin Mining proposal, the Special Committee unanimously determined that the Zijin Offer was superior to the Lundin Hostile Bid and to other potential alternatives available.

40.     Accordingly, the Special Committee unanimously resolved to recommend that the Nevsun Board approve the Zijin Offer and the execution of a pre-acquisition agreement with Zijin Mining. The Special Committee also unanimously reaffirmed its recommendation to the Nevsun Board that the Nevsun Board recommend that Nevsun Shareholders reject the Lundin Hostile Bid and not tender their Nevsun Shares to the Lundin Hostile Bid and that Nevsun Shareholders who previously tendered their Nevsun Shares to the Lundin Hostile bid should withdraw them.

41.     The Nevsun Board unanimously resolved to approve the Zijin Offer.  The Nevsun Board also unanimously reaffirmed its recommendation that Nevsun Shareholders reject the Lundin Hostile Bid and not tender their Nevsun Shares to the Lundin Hostile Bid.

42.     On September 5, 2018, Nevsun issued a press release announcing that it had entered into the Pre-Acquisition Agreement with Zijin Mining.

## The Proposed Transaction is Unfair to Shareholders

43.     The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

44.     When entering into the agreement with Zijin, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for Nevsun will be forthcoming.

45.     Specifically, pursuant to the agreement with Zijin, Defendants agreed to: (i) a "no-shop" provision that restricts the Company's ability to solicit alternative acquisition proposals for third parties; and (ii) a termination fee of $50 million that Nevsun must pay to Zijin in cash, essentially requiring an unsolicited bidder to pay a premium to provide a superior offer to the Company and its shareholders.

46.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Nevsun.  Given that the preclusive deal protection provisions impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to tender their shares in favor of the Proposed Transaction

**FALSE AND MISLEADING STATEMENTS**
**AND/OR MATERIAL OMISSIONS IN THE SOLICITATION STATEMENT**

47.     On September 14, 2018, the Company filed the Solicitation Statement and associated exhibits with the SEC.  The Solicitation Statement recommends that the Company's stockholders tender their shares in favor of the Proposed Transaction.

48.     Defendants were obligated to carefully review the Solicitation Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions concerning whether to tender their shares in favor of the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding BMO's Opinion Statement**

49.     The Solicitation Statement contains the financial analyses and opinion of BMO concerning the Proposed Transaction but fails to provide material information concerning information relied on by BMO in rendering its opinion.

50.     Specifically, the Solicitation Statement notes the following:

     i.     BMO relied upon "certain financial, operating, corporate and other information prepared or provided by or on behalf of the Company relating to business, operations and financial condition of the Company," but the Solicitation Statement fails to state what "financial, operating, corporate and other" information was provided to BMO in order to render its opinion;

    ii.     BMO relied upon "internal management forecasts, projections, estimates and budgets prepared or provided by or on behalf of management and the Company," but the Solicitation Statement does not indicate what forecasts, projections, estimates and budgets were provided to BMO in order to render its opinion;

   iii.     BMO relied upon "public information with respect to selected precedent transactions we considered relevant," but does not disclose any information pertaining to these selected transactions, such as benchmarking analyses for the Company relating to the target

> companies and the financial and operating characteristics and other
> factors observed by BMO relating to the other selected companies;
>
> iv.   BMO relied upon "historical commodity prices and the impact of
> various commodity pricing assumptions on the business, prospects and
> financial forecasts of the Company and the Acquiror," but the
> Solicitation Statement does not note which pricing assumptions it used
> nor which financial forecasts were used in rendering its opinion; and,
>
> v.    BMO relied upon "various reports published by equity research
> analysts, industry sources and credit rating agencies we considered
> relevant," but the Solicitation Statement did not disclose any detail of
> which reports, industry sources, or credit rating agencies were used.

51.   Disclosure of the above information is material, as it would provide the Company's shareholders with information regarding the Company's potential future financial performance, allowing shareholders to be fully informed when deciding whether to tender their shares in favor or against the Proposed Transaction.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding Citi's Opinion Statement</u>**

52.   The Solicitation Statement contains the financial analyses and opinion of Citi concerning the Proposed Transaction but fails to provide material information concerning information relied on by Citi in rendering its opinion.

53.   Specifically, the Solicitation Statement states the following:

> i.    Citi relied upon "certain publicly available and other business and
> financial information provided to or discussed with us by the
> management of Nevsun, including certain financial forecasts,

estimates and other information and data relating to Nevsun provided to or discussed with us by the management of Nevsun both before and after giving effect to certain business and operational sensitivities," but does not disclose which forecasts, estimates, or other information was provided in furtherance of Citi rendering its opinion;

ii.   Citi analyzed "certain financial, stock market and other publicly available information relating to the businesses of certain other companies whose operations we considered relevant in evaluating those of Nevsun and considered, to the extent publicly available, the financial terms of certain other transactions which we considered relevant in evaluating the Transaction," but the Solicitation Statement does not disclose which other companies were used in conducting Citi's analyses, nor does it disclose the benchmarking analyses for the Company relating to the other companies and the financial and operating characteristics and other factors observed by Citi relating to the other selected companies; and

iii.  Citi "held discussions with the management and other representatives of Nevsun regarding the currently pending hostile takeover bid for Nevsun commenced by Lundin Mining Corporation ("Lundin Mining") and considered, among other things, Nevsun's discussions with certain other third parties regarding a potential strategic investment in, or acquisition of all or a part of Nevsun," but the Solicitation Statement does not disclose any substantive information

regarding the third parties and whether another viable offer for the Company existed.

54.     Disclosure of the above information is material, as it would provide the Company's shareholders with information regarding the Company's potential future financial performance, allowing shareholders to be fully informed when deciding whether to tender their shares in favor or against the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

55.     Finally, the Solicitation Statement fails to disclose material information concerning the process leading up to the Proposed Transaction.  An accurate and complete description of the process the Board used in entering into the Proposed Transaction is indeed material to the Company's shareholders, as it is vital information to determine whether or not to tender shares in favor of the Proposed Transaction.

56.     Although the Solicitation Statement discusses that on September 26, 2017, Zijin Mining and Nevsun met at the Denver Gold Forum, at which time Nevsun confirmed its intention of engaging a strategic partner in an effort to expedite the development of the Timok Project, it fails to discuss any additional information regarding the what, where, when, and how of entering into the potential strategic partnership by way of certain strategic alternatives, including an acquisition of a 19.9% non-controlling stake in Nevsun (a "Strategic Investment").

57.     Although the Solicitation Statement discusses that on July 11, 2018, BMO, on behalf of Nevsun, invited Zijin Mining to submit a final binding proposal to make a Strategic Investment in Nevsun and that on July 12, 2018, Zijin Mining received a form of investment agreement from Nevsun (the "Investment Agreement"), the Solicitation Statement fails to disclose any terms referenced therein.

58.     Although the Solicitation Statement discusses that on July 18, 2018, members of the Board of Directors of Zijin Mining and Nevsun, and their respective advisors met at Nevsun's offices in Vancouver, British Columbia to discuss the terms of the Investment Agreement as well as Zijin Mining's preliminary due diligence review, and that at this meeting, Nevsun and Zijin Mining also discussed the potential of an opportunity for Zijin Mining to acquire all of the issued and outstanding shares of Nevsun, it never discloses the proposed terms.

59.     Again, although the Solicitation Statement discusses that on August 7 and 8, 2018, Zijin Mining submitted a further proposal to make a Strategic Investment in Nevsun (the "Second Proposal") and a non-binding proposal to Nevsun outlining proposed terms for an acquisition by Zijin Mining of all of the issued and outstanding shares of Nevsun through a friendly, board-supported take-over bid (the "Third Proposal") it never discloses the proposed terms of either proposal.

60.     Finally, although the Solicitation Statement discusses that August 29, 2018 through August 31, 2018, Nevsun hosted meetings with Zijin Mining and their respective advisors in Vancouver, British Columbia to, among other things, negotiate the terms of the Pre-Acquisition Agreement and Lock-Up Agreement, it fails to disclose the who, what, how and why of those discussions.

61.     The Solicitation Statement notes that 26 parties interested in engaging in a transaction with the Company were sent non-disclosure agreements, with 18 parties executing such agreements, but does not provide the terms of the agreements, including, but not limited to, whether they contain standstill and/or "don't ask, don't waive" provisions which would prevent the parties from making an unsolicited superior proposal to the Company.

62.     The omission of the above materials renders the Solicitation Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to tender their shares in favor of the Proposed Transaction without proper disclosures.  As such, shareholders are threatened irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**(Against All Defendants for Violations of Section 14(d)
of the Exchange Act and Rule 14d-9 Promulgated Thereunder)**

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

65.     As discussed herein, the Solicitation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresents and/or omits material facts concerning the Proposed Transaction.

66.     Defendants prepared, reviewed, filed and disseminated the false and misleading Solicitation Statement to Nevsun shareholders. In doing so, Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67.     The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a

reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

68.     By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing Nevsun's financial advisors' complete financial analyses purportedly summarized in the Solicitation Statement.

69.     The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

70.     Nevsun is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Solicitation Statement.

71.     Defendants knew that Plaintiff and the other members of the Class would rely upon the Solicitation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

72.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

73.     Plaintiff and the Class have no adequate remedy at law.

### COUNT II

**(Against All Defendants for Violation
Of Section 14(e) of the Exchange Act)**

74.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

75.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

76.     Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Solicitation Statement in determining whether to tender shares in favor of the Proposed Transaction.

77.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

### COUNT III

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

78.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

79.    The Individual Defendants acted as controlling persons of Nevsun within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nevsun, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

80.    Each of the Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

82.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

83.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

84.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Directing the Individual Defendants to disseminate an Amendment to its Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 9, 2018                                    Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com

23

**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Tammy Raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in NSU securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 11/06/2018

Signature

**Schedule A**

My transactions in NSU securities that are the subject of this litigation during the class period set forth in the complaint are as follows (P indicates a purchase, S indicates a sale):

| Security | Date | Sale Date | Purchase Date | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| NSU | 10/18/18 | | 8/25/15 | 43 | $2.76 |